**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ROBERT BOLES,

     *Plaintiff*,

*v.*

M. SERENSEN,
*Librarian*,

     *Defendant*.[1]

CASE NO. 11-CV-10892

DISTRICT JUDGE ARTHUR J. TARNOW
MAGISTRATE JUDGE CHARLES BINDER

                               /

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
(Doc. 12)

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that the motion be **DENIED**.

**II.    REPORT**

    **A.    Introduction**

On March 7, 2011, Plaintiff, a state prisoner currently housed at the Lakeland Correctional

Facility in Coldwater, Michigan, filed this *pro se* federal civil rights action under 42 U.S.C. §

1983, alleging that he was unconstitutionally retaliated against for exercising his First Amendment

rights. (Compl., Doc. 1.) The events forming the basis for the complaint occurred while Plaintiff

was housed at the Pine River Correctional Facility in St. Louis, Michigan. (Doc. 1 ¶ 1.)[2] On June

---

[1]On the docket (and therefore also in the caption above), Defendant's last name is spelled "Serensen." It appears from Defendant's brief and affidavit, however, that the correct spelling is "Sorensen." (Doc. 12-1 at 2-5.) The remainder of this document will use the correct spelling.

[2]As noted by Defendant, on October 17, 2010, Pine River Correctional Facility ("SPR") was consolidated with the Mid-Michigan Correctional Facility ("STF") and is now known as the Central Michigan Correctional Facility ("STF").

16, 2011, U.S. District Judge Arthur J. Tarnow entered an order referring pretrial matters to the undersigned magistrate judge. (Doc. 8.) Defendant Sorensen filed the instant motion for summary judgment on August 12, 2011. (Doc. 12.) After an extension of time, Plaintiff responded on September 27, 2011.[3] (Doc. 17.) Accordingly, pursuant to E.D. Mich. LR 7.1(f)(1), the motion is ready for report and recommendation without oral argument.

### B.    Factual Background & Record Evidence

The facts are largely undisputed; it is the motivation behind the facts that are at issue. Plaintiff contends that "immediately" after he was transferred to the Pine River Correctional Facility on May 29, 2009, he notified Defendant Sorensen "of his *pro se* status and firm trial date of March 23, 2010, in [federal] civil case no. 1:07-cv-277." (Doc. 1 ¶ 12.) Before granting Plaintiff additional time for use of the law library beyond the six hours per week given all prisoners, Defendant Sorensen asked to see "proof" from Plaintiff. (*Id.* ¶ 13.) Plaintiff alleges that he showed Defendant "his February 4, 2009, Case Management Order and she made a copy for her file." (*Id.*)

On June 29, 2009, Plaintiff was hired by Defendant Sorensen as a law library clerk.[4] (*Id.* ¶ 15.) On August 7, 2009, Defendant showed Plaintiff his work evaluation and asked Plaintiff to sign it. Plaintiff refused because he felt "it was not an accurate account of his performance." (*Id.* ¶¶ 18-20.) Plaintiff did not actually receive a copy of the evaluation until November 5, 2009, and on that same date, he filed a grievance against Defendant.[5] (*Id.* ¶¶ 21-22.) In the grievance,

---

[3]Plaintiff's response is 122 pages long, consisting of a 29-page brief, a 20-page affidavit, and 19 exhibits. (Doc. 17 & 17-1.) The exhibits begin on page 61 of Doc. 17 and continue through all of Doc. 17-1. Because the exhibits themselves are not labeled, they will be referenced by the page number assigned by the Court's Electronic Case Filing ("ECF") system. For the sake of consistency, Defendant's exhibits (Doc. 12-1) will also be referred to by the ECF page number.

[4] Plaintiff states that he had worked in the law library at his previous facility and that his former supervisor contacted Defendant to recommend that she hire Plaintiff. (*Id.* ¶ 14.)

[5]The grievance was given identification number SPR/2009/11/0673/02B. (Doc. 17 at 68-69.)

Plaintiff complained that his performance evaluation was not accurate and he asked to have the evaluation removed from his file. (*Id*. ¶ 23.) On November 23, 2009, "R. Miller, Classification Director, interviewed Plaintiff and agreed to remove [the] work assignment evaluation" and "gave Plaintiff [a] 60 day satisfactory performance evaluation with a back-date of August 29, 2009." (*Id*. ¶¶ 24-25, 28.) Plaintiff "signed off" on his grievance as being "resolved" when, by stipulation, he terminated his job at the law library and was reassigned to a position as a tutor. (*Id*. ¶¶ 26-27.)

Plaintiff avers that until resolution of his grievance against Defendant, Defendant had permitted him to utilize the standard six hours per week of law library time as well as additional time as requested. (*Id*. ¶ 28.) After the grievance was resolved in Plaintiff's favor, however, he avers that things changed. Although Plaintiff made two separate requests for additional library time (one left with Defendant and another given to law library clerk DeAndre Mansen on November 29, 2009), on December 4, 2009, Defendant denied Plaintiff's request, indicating that Plaintiff "'must have proof of deadline for more than six hours.'" (Doc. 1 ¶¶ 30-35.)

Defendant Sorensen responds by first clarifying that despite Plaintiff's implication that additional law library time is always given when requested, policy requires that prisoners demonstrate a need for additional time. (Sorensen Aff., Doc. 12-1 at 3 ¶¶ 5-6.) Defendant explains that Plaintiff's request for additional time stated that he had "received an amended case management order from the court in the above mentioned civil case and in the future [he] probably will need more time at night . . . , " and she interpreted this as a forewarning that Plaintiff would seek additional time in the future, but did not believe it to be a present request. (*Id*. ¶ 9.) In addition, Defendant states that although she "repeatedly asked [Plaintiff] for proof of a deadline, all he would tell her was, 'It's in there,' which she interpreted to mean it's in the amended case management order." (*Id*. ¶ 13.) Defendant considered Plaintiff's "response [to be] non-responsive

3

to her question." (*Id.*) Although Defendant states that she "recognizes that the amended case management order establishes various cut-off dates and trial dates, this normally does not aid her decision," and she instead requires an "order from the court indicating that the prisoner needs to file a response by a given date, such as when the court orders the prisoner to respond to a motion for summary judgment or dismissal." (*Id.* ¶¶ 14-15.) Defendant notes that Plaintiff "refused or was unable to provide me with that type of documentation nor could he identify any pleading he needed to respond to." (*Id.*)

Plaintiff states that since he had given Defendant a copy of the relevant case management order in May 2009 and had shown her an amended case management order, he believed Defendant's conduct was in retaliation for his receiving a favorable resolution to his first grievance against Defendant, so he filed a second grievance[6] against Defendant on December 7, 2009. (Doc. 1 ¶ 36.)

On December 15, 2009, Defendant Sorensen called B. Pung, Resident Unit Manager ("RUM") of Plaintiff's unit, to see if someone could shake down Plaintiff's cell to look for an amended case management order because "she needed to see all of it to verify the deadline and to verify that it hadn't been altered." (Pung Memo. to Inspector, Doc. 17-1 at 6.) RUM Pung then called Resident Unit Officer ("RUO") Fiesorger and "had him shakedown Boles' property looking for the requested paperwork." (*Id.*) When RUO Friesorger went to shake down Plaintiff's cell, Plaintiff asked what he was looking for and why, and after Friesorger told Plaintiff, Plaintiff handed him the amended case management order. (Friesorger Memo. to Inspector; Doc. 17-1 at 7.) Although Friesorger had been "told to take it and write a contraband removal for it[,]" Friesorger instead "called RUM Pung and told him [he] found it and [that he] did not feel

_____

[6]Grievance no. SPR/2009/12/0758/14A1. (Doc. 17 at 76.)

comfortable about writing a contraband removal for it [a]s it was not contraband." (*Id.*) RUM Pung told Friesorger to leave the amended case management order in the office. (*Id.*) Defendant came and looked at the document, told Plaintiff "he was OK" and left. (*Id.*)[7]

On December 18, 2009, Plaintiff filed a third grievance against Defendant, this time contending that Defendant violated the facility's grievance policy by interfering with the grievance investigation and harassing Plaintiff.[8] (Doc. 1 ¶ 50.)

On January 4, 2010, the step one response to Plaintiff's second grievance indicated that Plaintiff "may require extra time prior to the settlement conference (1/19/10) and the pretrial conference (2/22/10)," and that Plaintiff would be "offered an additional three hours/week of law library time, in addition to his six hours as defined by policy," through February 22, 2010, at which time Plaintiff "would be required to provide [Defendant] with a new deadline (specific date) in order to obtain more additional law library time." (*Id.* ¶¶ 38-40.)

On February 11, 2010, Plaintiff sent a kite to Defendant requesting ongoing additional time based on an order received in his federal case. (*Id.* ¶¶ 51-52.) On February 13, 2010, Defendant "removed Plaintiff from all of his law library call-outs contrary to the law library policy and the administration response to [second] grievance," which required that he be allowed law library time through February 22, 2010, and any additional time if he provided Defendant with a deadline evidenced by a specific date. (*Id.* ¶ 53-54.) Plaintiff showed the grievance response to Officer Ely who, in turn, showed it to Assistant Resident Unit Manager ("ARUM") Yale. ARUM Yale checked on the computer and found that Plaintiff was not scheduled for law library call-out for February 13, 14, or 15, and therefore Yale could not issue Plaintiff a pass. (*Id.* ¶ 55.) Plaintiff thus

---

[7]The statements in this paragraph are also found in the complaint. (Doc. 1 ¶¶ 41-48.)

[8]Grievance no. SPR/2009/12/0798/14A. (Doc. 17 at 78.)

filed a fourth grievance against Defendant[9] based on her removing him from the law library call-outs for February 13, 14, and 15, and alleging that her actions violated the relevant law library policies, the First and Fourteenth Amendments, and the instructions given in the step one response to his second grievance. (*Id.* ¶ 56-57.)

On February 24, 2010, the step one response to the fourth grievance, written by ADW Kohloff, indicated that Plaintiff had been taken off the law library call-out list because he had failed to properly sign in to the law library on November 8, 2009, and February 6, 2010, and that, according to policy, Plaintiff needed to send a kite to be placed back on call-out.[10] (*Id.* ¶ 58.) On February 27, 2010, after Plaintiff received Kohloff's grievance response, Plaintiff did as directed and sent a kite requesting to be placed back on the call-out for law library time. (*Id.* ¶ 59.)

Defendant concurs in the response to the fourth grievance (Sorensen Aff. ¶¶ 23-26) and has provided the law library logs for November 8, 2009, and February 6, 2010, showing where the prisoners sign in to the law library. (Doc. 12-1 at 26-27.) The February 6, 2010, log shows a blank space in the box next to Plaintiff's name and the November 8, 2009, log shows three small "x"s and a straight line in the box next to Plaintiff's name. (*Id.*) Neither of the parties have discussed the significance, if any, of the differences between the log sheet entries.

---

[9]Grievance no. 2010/02/114/14A1. (Doc. 17-1 at 31.)

[10]The Pine River law library rules, which were posted in the library in several places and which have been provided with Defendant's motion, state:

> Note: A prisoner who does not sign-in twice during a three (3) consecutive month time period will be removed from all General Library call-outs for 30 days. If a prisoner has overdue books the time will not start until the book(s) are returned.

(Doc. 12-1 at 24.)

C.      **Summary Judgment Standards**

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the

non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### D.      Law Governing Retaliation Claims

A First Amendment retaliation claim consists of the following elements: (1) the plaintiff was engaged in constitutionally-protected conduct; (2) the defendant's adverse action would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between elements one and two, i.e., the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (en banc); *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 217 (6th Cir. 2011).

As to the first element, the First Amendment protects a prisoner's filing of non-frivolous grievances. *Hill v. Lippin*, 630 F.3d 468, 472 (6th Cir. 2010). As to the second element, courts recognize that "a prisoner is expected to endure more than the average citizen . . . ." *Hix v. Tennessee Dep't of Corr.*, 196 Fed. App'x 350, 358 (6th Cir. 2006). "'[I]n most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law' . . . unless the claimed retaliatory conduct is truly 'inconsequential.'" *Kennedy v. Boneville,* 413 Fed. App'x 836, 839-40 (6th Cir. 2011) (quoting *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)).

As to the third element, "[w]hen assessing motive in the context of a summary judgment motion, [b]are allegations of malice do not suffice to establish a constitutional claim. This court has held that circumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399-400 (6th Cir. 2010) (citations omitted). The Sixth Circuit has "interpreted this inquiry to mean that 'a "motivating factor" is essentially but-for cause - "without which the action being challenged simply would not have been taken.'" *Id.* at 400. Courts use a "burden-shifting analysis for this part of the claim: 'Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant.'" *Id.* "'If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.'" *Id.*

### E.       Discussion

### 1.       First & Second Elements of Retaliation Claim

Defendant does not appear to contest the first element, namely, that Plaintiff was engaged in protected conduct by filing non-frivolous grievances. Nor does Defendant appear to contest the second element – that either interference with the grievance process or improper denial of law library time would deter a person of ordinary fitness from continuing to engage in protected conduct.

Even if Defendant had contested the first two elements, however, I would suggest that Plaintiff has averred and supported his averments adequately to survive summary judgment on these two elements of his retaliation claim. Plaintiff's first grievance against Defendant was resolved in his favor and thus was not frivolous. (Doc. 1 ¶¶ 21-28.) In addition, I suggest that being denied law library time during pending litigation and being subjected to a shakedown of one's cell

are sufficiently severe to deter a person of ordinary firmness and are not "inconsequential" actions. *See Kennedy, supra.*

> ### 2.      Third Element of Retaliation Claim

Defendant moves for summary judgment on the basis of the third element: causation. As to interference with the grievance process, Defendant argues that she "had no authority over the grievance investigation or what course of action the investigator undertook." (Doc. 12 at 9.) As to law library time, Defendant argues that Plaintiff "cannot show that he would have been [given] additional Law Library time or remained on Law Library call-out after violating the rules 'but for' his grievances and complaints." (*Id.* at 10.) Defendant further contends that she would have taken the same action against any prisoner under like circumstances, and that her actions were "consistent with the library rules" that "[a] prisoner who does not sign in twice during a three (3) consecutive month time period will be removed from all Law Library call-outs." (*Id.* at 9-10.)

> ### a.      Plaintiff's Burden to Establish that Protected Conduct was a Motivating Factor

Plaintiff has the initial burden of establishing that his protected conduct was a motivating factor. *Vereecke*, 609 at 400. To that end, Plaintiff alleges that after his first grievance (regarding his job evaluation) was resolved in his favor (Doc. 1 ¶¶ 24-25, 28), Defendant began either ignoring or denying his requests for additional law library time. (*Id.* ¶¶ 30-35.) Although Defendant contends that she believed Plaintiff's request was merely a warning that he would need additional law library time in the future (Doc. 12 at 7; Doc. 12-1 at 3 ¶ 9) and thus that she was not unreasonable in requiring more proof of an actual deadline than a case management order (Doc. 12 at 8; Doc. 12-1 at 4 ¶ 13), I suggest that the timing of the change in attitude toward Plaintiff allows an inference of retaliatory motive. On February 13, 2010, shortly after Plaintiff's second grievance was also resolved in his favor allowing him additional time in the library, Defendant

10

"removed Plaintiff from all of his law library call-outs . . . ." (Doc. 1 ¶ 53-54.) Although Defendant

contends that this measure was taken because Plaintiff failed to sign in on February 6, 2010, her

action denying Plaintiff access was not taken immediately after that date but instead was taken just

two days after Plaintiff sent a kite. (*Id*. ¶¶ 51-52.)

As to the shakedown, I suggest that there has been no fully understandable rationale offered

by Defendant for her decision to call RUM Pung and request a shakedown of Plaintiff's cell to

search for an amended case management order that may have been altered. (Pung Memo., Doc. 17-

1 at 6.) Further, although Defendant had indicated that the order was contraband, even the officer

executing the shakedown was not comfortable with Defendant's characterization of the document

and refused to write a contraband removal ticket for it. (Friesorger Memo., Doc. 17-1 at 7.)

Accordingly, in light of the timing of Defendant's denial of additional library time and her

unusual and unfounded behavior of requesting a shakedown and the confiscation of the scheduling

order, I suggest that Plaintiff has sufficiently met his burden to establish that retaliation was a

motivating factor behind the actions taken by Defendant so as to withstand summary judgment.

### b.      Defendant's Burden to Show She Would Have Taken the Same Action Even in the Absence of the Protected Activity

Defendant contends that even if Plaintiff has met his burden as to retaliatory motive with

respect to her denial of law library access, she is entitled to summary judgment because she has

produced sufficient evidence to show that she would have taken the same action in the absence of

the protected activity. Defendant points to the prison policy stating that "[a] prisoner who does not

sign in twice during a three (3) consecutive month time period will be removed from all Law

Library call-outs. He must kite the library to be placed back on the call-out." (Doc. 12-1 at 24.)

Defendant contends that Plaintiff failed to sign in on November 8, 2009, and February 6, 2010, and

therefore was properly banned from the library call-outs pursuant to the policy. (Doc. 12-1 at 5 ¶ 25.)

I suggest that, even under Defendant's own reasoning for her actions, the explanation fails because the two dates Defendant points to – November 8, 2009, and February 6, 2010 – did not occur within a consecutive three-month period as required by the policy. The first alleged failure to sign in was in November 2009, and therefore the relevant three-month consecutive time period would be November-December-January. The second failure to sign in did not occur until February. Accordingly, I suggest that the policy was not followed and thus this rationale cannot satisfy Defendant's burden.[11]

Finally, even if Defendant had correctly enforced or thought she had correctly enforced the library policy, Defendant offers no plausible explanation or evidence justifying the shakedown and requested confiscation of the amended scheduling order. I therefore suggest that Defendant has not shown that she is entitled to judgment as a matter of law and that her motion should be denied.

### 3.    Qualified Immunity

Defendant's motion for summary judgment also argues, in the alternative, that she is entitled to qualified immunity. (Doc. 12 at 11-13.) However, I suggest that Defendant is not entitled to the defense of qualified immunity under the instant facts because the conduct alleged by Plaintiff, which at this stage must be evaluated in a light most favorable to Plaintiff, is objectively unreasonable in light of clearly established constitutional rights. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005).

---

[11]In addition, I suggest that there is some question whether Plaintiff actually failed to sign in on November 8, 2009, since there was a mark placed next to Plaintiff's name on the sign-in sheet and Defendant has not argued that the line was placed by anyone other than Plaintiff.  (Doc. 12-1 at 26-27.)

## F.    Conclusion

For all the reasons stated above, I recommend that Defendant's motion be denied.

## III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this report and recommendation. *McClanahan v. Commissioner of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97.

 s/ 𝕮𝔥𝔞𝔯𝔩𝔢𝔰 𝕰 𝕭𝔦𝔫𝔡𝔢𝔯

CHARLES E. BINDER

Dated: November 18, 2011                     United States Magistrate Judge

13

## **CERTIFICATION**

I hereby certify that this Notice was electronically filed this date, electronically served on Allan Soros, and by first class mail on Robert Boles, #156632, Lakeland Correctional Facility, 141 First St., Coldwater, MI, 49036.

Date:  November 18, 2011          By      s/*Jean L. Broucek*
                                  Case Manager to Magistrate Judge Binder

14